IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 13, 2013 Session

**STATE OF TENNESSEE VS. CHRIS NACHAMPASAK**

**Appeal from the Circuit Court for Rutherford County**
**No. F65889     David M. Bragg, Judge**

---

**No. M2012-02332-CCA-R3-CD - Filed September 23, 2013**

---

Appellant, Chris Nachampasak, was indicted by the Rutherford County Grand Jury for one count of first degree murder, one count of felony murder, four counts of aggravated assault, and one count of reckless endangerment after a drive-by shooting at a graduation party that resulted in the death of a fourteen-year-old child.  Appellant subsequently pled guilty to a single count of second degree murder and two counts of aggravated assault in return for the dismissal of the remaining counts of the indictment.  In exchange for the guilty pleas, Appellant received an effective sentence of thirty-five years in incarceration.  Subsequently, Appellant filed a motion to withdraw the guilty pleas.  After a hearing, the trial court denied the motion.  Appellant filed a timely notice of appeal challenging the trial court's denial of the motion to withdraw the guilty pleas.  After a review, we determine that the trial court did not abuse its discretion in denying the motion to withdraw the guilty pleas where Appellant failed to show a manifest injustice.  Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Luke A. Evans and Heather G. Parker, Murfreesboro, Tennessee, for appelant, Chris Nachampasak.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William Whitesell, District Attorney General, and Trevor Lynch, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

In February of 2011, Appellant was indicted by the Rutherford County Grand Jury for one count of first degree murder, one count of felony murder, four counts of aggravated assault, and one count of reckless endangerment.

Prior to the guilty plea, Appellant sent a letter to the trial court asking for another attorney. Later, Appellant filed a "Motion to Relieve" trial counsel as his counsel of record. Appellant had a change of heart prior to the trial court's decision on the motion, sending a letter to the trial court in which he requested that the clerk not file the motion.

When the matter was eventually set for hearing in May of 2012, Appellant was presented with an offer of settlement from trial counsel. Appellant requested additional time to review the offer but was advised by trial counsel that the decision needed to be fairly immediate or the offer would be rescinded. Appellant made the decision to enter the guilty plea.

At the guilty plea submission hearing, the State informed the trial court that the victims and their families did not agree with the State's decision to enter into plea negotiations with Appellant. Nevertheless, the State provided the factual basis for the guilty plea as follows:

> [On] or about May 16th 2010 [Appellant] along with at least two other individuals went to a residence where there was a graduation party. [Appellant] was seen at the party earlier that night. There had been some problems between a friend of [Appellant] and one of the guests at the party. It would be testimony from witnesses that there was a lot of concern about complications or problems that may occur with [Appellant] being there. He stayed at the party briefly. [He] left the party and then came back a short time later with other individuals getting out of the car. When they got out of the car multiple shots were fired toward the porch . . . striking [one of the victims]. He was sitting on the porch. He was dressed in a similar clothing style as far as the color of shirt, style of shirt, and a hat and pants that the individual believed [to be the individual that Appellant] had a problem with earlier in the evening. The young man was struck one time in the head and succumbed to his injuries. There were multiple rounds located at the scene coming from a .45 caliber handgun, a .40 caliber handgun, and a 9 [millimeter] handgun. There [were] several other individuals on the porch that were running while

the shots were being fired in their general direction. . . . [A] 9 [millimeter] round [was] recovered from the door that was in the same trajectory as that which would have been required to hit the victim.

At the guilty plea hearing, the trial court engaged Appellant in a plea colloquy. During his testimony, Appellant agreed with the terms of the plea agreement. Appellant also acknowledged that he had discussed the agreement with his attorney, and he understood his constitutional right to maintain a plea of not guilty and proceed to trial. Appellant agreed that by pleading guilty he was waiving his right to request a new trial and an appeal of the guilty verdict. Appellant specifically stated that he felt that he had enough time to make the plea agreement and was not rushed or pressured into entering into the agreement.

Appellant informed the trial court that he had a GED and no difficulty reading or writing. Appellant stated that he had talked generally with trial counsel about his case on a number of occasions prior to the guilty plea. Appellant affirmed that trial counsel had reviewed the charges, defenses, and possible punishments. Appellant also agreed that the facts as stated by the State were essentially correct.

At that time, trial counsel asked to question Appellant. Trial counsel noted, and Appellant agreed, that the two had discussed the case on "many occasions," including reviewing thirty-six compact discs of discovery materials provided by the State. Appellant recalled that he had asked to get a second opinion and asked trial counsel's permission to seek additional legal advice. Trial counsel did not object, so Appellant's family contacted an attorney in Minnesota who came to Tennessee to meet with Appellant. After this meeting, Appellant authorized trial counsel to negotiate with the State to settle the case for "30 years."

The trial court accepted the guilty plea and entered judgments reflecting that Appellant was sentenced to twenty-five years at 100% for the second degree murder conviction, five years for one count of aggravated assault to be served consecutively to the second degree murder sentence, and five years for a second count of aggravated assault to be served consecutively to the two other sentences. Appellant's effective sentence was thirty-five years.

On May 22, 2012, four days after the entry of the plea, Appellant wrote a letter to the trial court seeking to withdraw his guilty plea. Appellant claimed that trial counsel did not put forth his "best efforts" and that Appellant had not reviewed all the discovery materials.

The trial court held a hearing on Appellant's motion to withdraw. Trial counsel testified that he had worked in the Public Defender's Office since 1989. Before working in the Public Defender's Office, trial counsel was an assistant district attorney for five years.

Trial counsel has represented numerous defendants in first degree murder cases and is death penalty certified.

Prior to the entry of the guilty plea, trial counsel met with Appellant on at least ten occasions separate and apart from several courtroom meetings. Trial counsel recalled reviewing the compact discs of discovery from the State prior to the plea. He noted that many of the discs contained duplicitous information. Trial counsel made copies of the material on the discovery discs for Appellant, providing him with well over 100 pages of documents. Trial counsel also reviewed the actual discs on a laptop computer. He offered to go through every document with Appellant, but Appellant stated that he had "seen all [he] need[ed] to see."

Trial counsel explained to Appellant that there was a large amount of circumstantial evidence supporting a conviction if Appellant went to trial. There was at least one eyewitness that identified Appellant, and ballistics had matched a shell casing left at the scene with weapons recovered from Appellant's car. Trial counsel explained to Appellant that a lack of direct evidence could make it hard to prove identity and premeditation but that the felony murder charge did not require premeditation.

Trial counsel was aware of the letter that Appellant sent to the trial court requesting a new attorney in March. Trial counsel stated that he had fully investigated the case and witnesses and would have investigated any witnesses that Appellant provided. However, according to trial counsel, Appellant was not able to provide the names of additional witnesses. Appellant even refused to verify names of people that trial counsel believed were involved in the incident.

Trial counsel acknowledged that he allowed Appellant to meet with another attorney to review his case. This attorney met with trial counsel and then met with Appellant. This attorney later informed trial counsel that he informed the family that there was not "anything [he] could do for [Appellant] that [trial counsel] was not doing."

Trial counsel acknowledged that the original purpose for the May 18 hearing was to review the status of the case. Trial counsel claimed that plea negotiations had been ongoing prior to this hearing date, and the State had already offered a plea to the indictment as charged in return for a life sentence with the possibility of parole. Appellant rejected this offer.

The State's next offer included a sentence of thirty to thirty-five years if Appellant provided certain information to the family of the victim. Appellant was either unable or unwilling to provide this information. As late as May 1, trial counsel wrote a letter to

Appellant informing him that if he were unable to provide the information requested by the State, there was no chance of a plea agreement.

Two weeks prior to the May 18 hearing, trial counsel received a letter from Appellant authorizing a plea to a thirty-year sentence. Trial counsel recalled that when he gave the information to the State, the family still expressed their objection to the agreement if Appellant failed to provide information about other individuals involved in the offense. The State countered with the offer of thirty-five years. Trial counsel discussed the offer with Appellant. Trial counsel told him it was the final offer, and he needed to make a decision because they were "up against a deadline" as they had already asked the trial court for several adjourned plea days and Appellant also "picked up another charge that was pending in general sessions court." Trial counsel was hesitant for Appellant to wait to make a decision on the plea because he feared the State would rescind the offer. Despite his reservations, trial counsel offered to ask the trial court for additional time. Appellant made the decision at that time to proceed with the plea agreement.

At the conclusion of the hearing on the motion to withdraw the guilty plea, the trial court denied the motion. The trial court commented that there had "been no testimony today that the plea was entered by [Appellant] through fear or fraud or that it was not made voluntarily." Further, the court found that there were "numerous" discussions concerning the plea offer and the impact of the sentences on Appellant; there was no evidence of the failure of the State to disclose exculpatory evidence; the evidence supported a finding that the plea was entered knowingly, voluntarily, and understandingly; and the evidence did not support a finding of a failure on the part of trial counsel "to perform at or above the level required in providing assistance in counsel." In conclusion, the trial court stated that "[t]he record is devoid of any basis for this Court to find that this plea should be withdrawn to prevent manifest injustice." As a result, the trial court denied the motion to withdraw the guilty plea.

Appellant filed a timely notice of appeal.

*Analysis*

On appeal, Appellant claims the trial court abused its discretion in denying the motion to withdraw the guilty pleas. Specifically, Appellant claims: (1) he was denied due process of law in regard to the effective assistance of counsel; (2) the attorney-client relationship had been severed and as a result Appellant was not effectively represented; (3) Appellant could not completely review the discovery; and (4) Appellant was rushed into accepting the plea agreement. The State contends that Appellant failed to demonstrate manifest injustice.

-5-

This Court reviews a trial court's decision regarding a motion to withdraw a guilty plea for an abuse of discretion. *State v. Crowe*, 168 S.W.3d 731, 740 (Tenn. 2005); *State v. Turner*, 919 S .W.2d 346, 355 (Tenn. Crim. App. 1995). "An abuse of discretion exists if the record lacks substantial evidence to support the trial court's conclusion." *Crowe*, 168 S.W.3d at 740 (citing *Goosby v. State*, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995)).

A defendant's right to withdraw a guilty plea is governed by Rule 32(f) of the Tennessee Rules of Criminal Procedure:

> (1) *Before Sentence Imposed*. Before sentence is imposed, the court may grant a motion to withdraw a guilty plea for any fair and just reason.

> (2) *After Sentence But Before Judgment Final.* After sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice.

In the case herein, Petitioner entered his guilty pleas on May 18, 2012. He was sentenced and the judgments were entered on the same day, and he filed the motion to withdraw his guilty pleas on May 22, 2012. Because Petitioner filed the motion to withdraw his guilty pleas "'after the sentence [was imposed] but before the judgment[s] [became] final,'" the more demanding standard, "to correct manifest injustice," applies to our review of this issue. *Crowe*, 168 S.W.3d at 741; (quoting Tenn. R. Crim. P. 32(f)). "This standard is based 'upon practical considerations important to the proper administration of justice.'" *Crowe*, 168 S.W.3d at 741 (quoting *Kadwell v. United States*, 315 F.2d 667, 670 (9th Cir. 1963)). In analyzing the meaning of "manifest injustice," this Court wrote:

> Rule 32(f) does not define "manifest injustice," however, courts have identified circumstances that meet the manifest injustice standard necessary for withdrawal of a plea. Withdrawal to correct manifest injustice is warranted where: (1) the plea was entered through a misunderstanding as to its effect, or through fear or fraud, or where it was not made voluntarily; (2) the prosecution failed to disclose exculpatory evidence as required by *Brady v. Maryland*, [373 U.S. 83 (1963)] and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

*State v. Virgil*, 256 S.W.3d 235, 240 (Tenn. Crim. App. 2008) (internal citations omitted). Appellant bears the burden of establishing that his plea should be withdrawn to correct a

manifest injustice.  *State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995).

"A defendant does not have a unilateral right to withdraw a plea."  *Crowe*, 168 S.W.3d at 740; *see also State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003) (stating that once a defendant enters a guilty plea, he cannot later withdraw it as a matter of right).  "[A] defendant's change of heart about pleading guilty or [his] dissatisfaction with the punishment ultimately imposed does not constitute manifest injustice warranting withdrawal."  *Crowe*, 168 S.W.3d at 743 (citing *Turner*, 919 S.W.2d at 355).  Whether a defendant should be allowed to withdraw his guilty plea is left to the sound discretion of the trial court, regardless of when the motion is filed.  *Crowe*, 168 S.W.3d at 740; *Mellon*, 118 S.W.3d at 345-46; *Turner*, 919 S.W.2d at 355 (citing *Henning v. State*, 201 S.W.2d 669, 671 (Tenn. 1947); *State v. Drake*, 720 S.W.2d 798, 799 (Tenn. Crim. App. 1986); *State v. Anderson*, 645 S.W.2d at 254 (Tenn. Crim. App. 1982)).  An appellate court will not disturb the trial court's ruling unless a clear abuse of discretion is evident on the face of the record.  *Crowe*, 168 S.W.3d at 740; *Turner*, 919 S.W.2d at 355.  A trial court abuses its discretion if the record fails to contain substantial evidence to support the trial court's conclusion.  *Crowe*, 168 S.W.3d at 740; *Goosby v. State*, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995).

When analyzing a guilty plea, we look to the federal standard announced in *Boykin v. Alabama*, 395 U.S. 238 (1969), and the State standard set out in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977).  *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999).  In *Boykin*, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted.  *Boykin*, 395 U.S. at 242.  Similarly, our Tennessee Supreme Court in *Mackey* required an affirmative showing of a voluntary and knowing guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea.  *Pettus*, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats.  *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).  The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences.  *Pettus*, 986 S.W.2d at 542; *Blankenship*, 858 S.W.2d at 904.

Appellant's guilty plea colloquy, which is included in the record, demonstrates that he agreed that he understood the plea agreement and that the trial court fully explained both the charges and the corresponding sentences. During the plea colloquy, Petitioner admitted that he was satisfied with his attorney and desired to plead guilty. Petitioner further indicated that he understood his rights and the sentence he was about to receive and was ready to plead guilty.  Moreover, at the hearing on the motion there was no testimony that the plea was entered through fear or fraud or that it was involuntary.  In fact, trial counsel testified to

discussions with Appellant concerning the plea offer and the impact of the sentences on Appellant; the evidence supported a finding that the plea was entered knowingly, voluntarily, and understandingly. Finally, there was no evidence that trial counsel failed to perform effectively. On this record, we cannot find that the trial court in any way abused its discretion in denying Appellant's motion as there was no manifest injustice that would require the withdrawal of the guilty pleas. This issue is without merit.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JERRY L. SMITH, JUDGE